UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RUSSELL COHEN,

                                        Plaintiff,

              -against-                                                              **COMPLAINT**

HEMPSTEAD UNION FREE SCHOOL DISTRICT,
REGINA ARMSTRONG, JULIUS BROWN, RODNEY
GILMORE, SUSAN JOHNSON, and BEVERLY JONES
(individually and in their official capacities),

                                        Defendants.
------------------------------------------------------------------------X

Plaintiff, RUSSELL COHEN, by and through his attorneys, WHITE, RICOTTA &

MARKS, P.C., complaining of Defendants herein, alleges, upon knowledge as to himself and his

own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the discrimination

against Plaintiff in the terms, conditions, and privileges of his employment, as well

as the deprivation by Defendants, under the policies, ordinances, custom and usage

of all rights, privileges and immunities secured to Plaintiff by the Fourteenth

Amendment to the Constitution of the United States and all of the laws and statutes

thereunder.  This action also arises under Title VII of the Civil Rights Act of 1964,

42 U.S.C. §2000-e, *et seq.*, the Americans with Disabilities Act, and any other

cause of action which can be inferred from the facts set forth herein.

1

2. The jurisdiction of this Court is invoked under 28 U.S.C. § 1331, the doctrine of pendant jurisdiction and the aforementioned statutory and constitutional provisions.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. All conditions precedent to maintaining this action have been fulfilled. A Charge of Discrimination was filed with the State Division of Human Rights, which was cross-filed with the EEOC. A Notice of Right to sue was issued by the EEOC in this matter, which was received on or about January 21, 2016. This action is filed within ninety (90) days of receipt of said Right to Sue letter.

## PARTIES

5. At all times hereinafter mentioned, Plaintiff Russell Cohen ("Cohen") was and still is a resident of the County of Nassau, State of New York.

6. Defendant, Hempstead Union Free School District ("HUFSD"), was at all times relevant to the matters set forth below, and is currently, an agency of the State of New York and a public employer, located at 185 Peninsula Blvd, Hempstead, New York 11550 in the County of Nassau.

7. Defendant, Regina Armstrong ("Armstrong"), Assistant Superintendent for Elementary Curriculum and Instruction, at all relevant times, was Plaintiff's supervisor during his employment at HUFSD. Armstrong aided, abetted, compelled and/or incited the unlawful treatment set forth below. Armstrong was

2

and/or is responsible for the hiring, firing, promotion and discipline of employees and other employment related issues. Additionally, Armstrong is a policymaker for HUFSD, charged with the responsibility of insuring that employees are not subjected to discriminatory practices. Armstrong had the power to make personnel decisions regarding Plaintiff's employment.

8. Defendant, Julius Brown ("Brown"), Deputy Superintendent and/or Assistant Superintendent for Personnel, at all relevant times, was Plaintiff's supervisor during his employment at HUFSD. Brown aided, abetted, compelled and/or incited the unlawful treatment set forth below. Brown was and/or is responsible for the hiring, firing, promotion and discipline of employees and other employment related issues. Additionally, Brown is a policymaker for HUFSD, charged with the responsibility of insuring that employees are not subjected to discriminatory practices. Brown had the power to make personnel decisions regarding Plaintiff's employment.

9. Defendant, Rodney Gilmore ("Gilmore"), Associate Superintendent for Personnel, at all relevant times, was Plaintiff's supervisor during his employment at HUFSD. Gilmore aided, abetted, compelled and/or incited the unlawful treatment set forth below. Gilmore was and/or is responsible for the hiring, firing, promotion and discipline of employees and other employment related issues. Additionally, Gilmore is a policymaker for HUFSD, charged with the responsibility of insuring that employees are not subjected to discriminatory practices. Gilmore had the power to make personnel decisions regarding Plaintiff's employment.

3

10. Defendant, Susan Johnson ("Johnson"), Superintendent of Schools, at all relevant times, was Plaintiff's supervisor during his employment at HUFSD. Johnson aided, abetted, compelled and/or incited the unlawful treatment set forth below. Johnson was and/or is responsible for the hiring, firing, promotion and discipline of employees and other employment related issues. Additionally, Johnson is a policymaker for HUFSD, charged with the responsibility of insuring that employees are not subjected to discriminatory practices. Johnson had the power to make personnel decisions regarding Plaintiff's employment.

11. Defendant, Beverly Jones ("Jones"), Director of Mathematics, at all relevant times, was Plaintiff's supervisor during his employment at HUFSD. Jones aided, abetted, compelled and/or incited the unlawful treatment set forth below. Jones was and/or is responsible for the hiring, firing, promotion and discipline of employees and other employment related issues. Additionally, Jones is a policymaker for HUFSD, charged with the responsibility of insuring that employees are not subjected to discriminatory practices. Jones had the power to make personnel decisions regarding Plaintiff's employment.

## FACTS

12. Cohen is a white, Jewish male who suffers from a disability. Specifically, Cohen suffered a torn labrum, bicep, and rotator cuff, which included an impingement and bursitis. Cohen's disability impacted his ability to lift and otherwise move.

13. In 1996, Cohen was hired by HUFSD as a teacher.

14. Throughout the course of Cohen's employment with HUFSD, he has performed his job in an exemplary manner.

15. This is evidenced by the fact that, throughout the course of his employment, Cohen received numerous promotions, and on June 25, 2010, HUFSD promoted Cohen to serve as a Professional Developer.

16. As a Professional Developer, Cohen was responsible for, *inter alia*, aligning curriculums with state and local assessments, training, coaching and mentoring staff, developing school budgets, and developing instructional schedules.

17. On October 19, 2011, Cohen filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"), wherein he alleged that he was subjected to various acts of discrimination during the course of his employment at HUFSD. Said complaint received a finding of probable cause by the NYSDHR, and the matter was ultimately settled between Cohen and HUFSD in or around December 2012.

18. On May 9, 2012, while at work, Cohen injured his shoulder, as detailed above, necessitating his taking an approved sick-leave in order to have surgery.

19. In August 2012, Cohen requested a transfer to Marshall School within HUFSD, under the supervision of Principal Cheryl McBeth, who had voiced her desire to have Cohen ultimately function as her AP and eventual replacement as Principal. In response to Cohen's request, Julius Brown ("Brown") (then-Associate Superintendent) responded, "don't we have ongoing problems with you?" This was a clear reference to Cohen's prior complaints of discrimination and SDHR

filings.  Cohen responded to Brown that he (Cohen) was not the problem, but rather, the problem was with how others had treated him.

20.    In September 2012, at the outset of the 2012/2013 school year, Cohen reported to work at the Barack Obama Elementary School.  He was assigned to a class that contained students who suffered from behavioral issues and had a history of poor academic performance.  Helise Palmore, Cohen's then-principal, stated that the "class was made with you in mind."  Upon information and belief, this was again a reference to Cohen previously complaining and was Palmore's subtle way of advising Cohen that he had been assigned this class as a means of retaliating against him for his prior protected activity.

21.    Nonetheless, Cohen proceeded with teaching the class to which he was assigned, but identified, on his first day of teaching, that he was unable to teach until he further recovered from his disabilities.  Accordingly, Cohen took a sick leave from September 2012 through December 13, 2012.

22.    On December 14, 2012, Cohen attempted to return to work, but continued to have limited mobility within his shoulder, which impacted his ability to write on a chalkboard and otherwise use his arm.  At this time, Cohen requested an opportunity to discuss reasonable accommodation for his disabilities with Brown. Specifically, Cohen requested, through his supervisor, Kathy Trukafka ("Trukafka"), Principal, an accommodation for his disabilities.  Trukafka directed Cohen to address his requested accommodations with Brown, who denied the request, stating "in all my years, I have never taken a full day off of work, sick or not.  You're being paid to do a job and, if you can't do that job, you should find a

different one." Brown did not engage in an interactive process of identifying an acceptable accommodation for Cohen and simply dismissed the possibility of any accommodation. As a result, Cohen was forced to remain out of work.

23. On March 1, 2013, Cohen submitted a medical note, which indicated that he was scheduled for surgery on April 3, 2013, and would be able to return to work approximately six weeks thereafter (on or about June 14, 2013).

24. On April 3, 2013, Cohen underwent surgery to repair tears to his rotator cuff, labrum, and bicep region.

25. On June 4, 2013, at the request of Sheryl McBeth (Principal of Franklin Elementary School), Trukafka, and Richard Brown (Principal of the Early Childhood Center), Cohen applied for the role of Assistant Principal ("AP") for the 2013/2014 school year.

26. Trukafka told Cohen that she wanted him as her AP, but feared retaliation from HUFSD due to Russell's prior protected activities (i.e. his prior complaint of discrimination). She stated further that she was forced to place a similarly-situated Black teacher (with no AP experience), who had not complained of discrimination, as her AP. At this point, Cohen had never formally held the title of Assistant Principal, but as a Curriculum Specialist, he had functionally held the role of Assistant Principal (and at times, Acting Principal) for approximately six to seven years under McBeth and other principals.

27. Shortly thererafter, Trukafka emailed Cohen to advise him that he was going to be offered an AP position with McBeth.

28.     On June 5, 2013, Cohen notified HUFSD that his treating physician medically cleared him to return to work on June 17, 2013.

29.     On June 7, 2013, McBeth notified Cohen that he was not on the list of candidates for the AP position at her school.  Cohen then spoke to Associate Superintendent Rodney Gilmore ("Gilmore") who stated that he saw Cohen's application for the position, but his application was nonetheless "mistakenly" excluded from the candidate list.  Cohen asked, in light of this alleged oversight, that the candidate list be amended, but Gilmore declined without voicing any business justification for this decision.  Upon information and belief, Cohen was the only qualified candidate that submitted an application but was excluded from the candidate list.  Moreover, upon information and belief, none of the other candidates had similarly engaged in protected activities.

30.     On June 14, 2013, Cohen received a letter from HUFSD stating that he was required to receive medical clearance before he would be permitted to return to work.  This was despite the fact that Cohen had already received and submitted medical documentation which medically cleared him to return to work.

31.     Between July 2013 and August 2013, after extensive interviews, McBeth told Cohen that he would be her new AP in September 2013.

32.     Traditionally, Principals select who they want to serve as APs within their schools, and the Superintendent typically "rubber stamps" and honors this selection.  Nonetheless, despite McBeth's selection of Cohen, two similarly situated employees outside of Cohen's protected class, and who had not complained about

discrimination (Ronald Simpkins and Miriam Ortiz) and who possessed less AP experience, were hired as McBeth's APs.

33. Throughout the 2013/2014 school year, McBeth appointed Cohen as the acting Administrator/Principal when her and her APs were absent.

34. In September 2013, just before the start of the school year, McBeth informed Cohen that he would serve as the school's AIS Math Specialist. As an AIS Math Specilist, Cohen conducted teacher obervations, modeled lessons, coached teachers, performed data analysis and curriculum advisement, planned faculty meetings, and communicated with district administrators. Moreover, while Cohen was function in this title, he was functionally directed by McBeth, and did in fact, function as an Assistant Principal. At this time, McBeth advised Cohen that Julius Brown and Regina Armstrong ("Armstrong"), Associate Superintendent, refused to allow Cohen to be hired into the AP position because he had previously sued HUFSD. Moreover, McBeth advised Cohen that Beverly Jones ("Jones"), Math Director, did not want Cohen to be hired into the AIS Math Specialist position for the same reason (i.e. his prior complaints of discrimination).

35. In October 2013, Jones treated Cohen in a harsh manner by slamming doors near him and refusing to answer his work-based questions. Moreover, Jones would consistently disparage Cohen to other colleagues within the administrator's office.

36. On October 23, 2013, during a meeting between Cohen, McBeth, and Jones, Jones stated to McBeth that she "doesn't want Russell in her room because he'll sue me. I never wanted him in the position and he won't be for long."

37. On October 28, 2013, McBeth approved Cohen's request to attend a math conference that would improve teachers' implementation of the new NY Math Modules programs. However, Armstrong and Jones overruled McBeth and prevented Cohen from attending the conference to receive the training he would have received. Other similarly situated employees who were outside Cohen's protected classes and/or had not complained about discrimination were permitted to attend the conference, including Jaelle Mann-Tineo, an IAS Math Specialist of Latin descent.

38. In November 2013, Jones told McBeth that Cohen undermined the District's ability to implement the Modules programs. McBeth responded that many of Cohen's teachers (who he coached) expressed positivity about Cohen's work with the program. Jones ignored this fact and responded that she did not want to work with Cohen. Again, upon information and belief, Jones' lack of willingness to work with Cohen was due to his having previously engaged in protected activities.

39. In December 2013, Jones sent Cohen a number of emails, each with biblical verses attached.

40. On December 16, 2013, Cohen responded to Jones' emails, stating: "I am in receipt of several of your emails which contain specific quotes from the bible… as you are aware based on our history, I am not a Christian and do not appreciate conduct that can be construed as discriminatory. To that end, I am offended that you persist on promoting your religious ideology in the workplace. This is creating a discriminatory work environment for me and I would appreciate it if it would stop. Thank you."

41. Thereafter, from January 2014 through June 2014, Cohen continued to be subjected to a constant and relentless pattern of harassment at the hands of Jones. For example, Jones would consistently exclude Cohen from meetings, would ignore his questions, denied him leave to attend funeral, and had a general air of hostility toward Cohen that was manifested, for example, by her repeatedly slamming papers down in front of him speaking to him in a hostile manner. Cohen's similarly situated coworkers outside of his protected classes and who had not complained about discrimination were not similarly treated by Jones.

42. In June 2014, Cohen applied for a Principal position, after having performed duties consistent with Assistant Principal and Professional Developer under McBeth for the prior school year.

43. McBeth told Cohen that the District would not consider him due to his prior complaints of discrimination. McBeth reiterated this fact on numerous occasions throughout Cohen's employment at HUFSD, expressing, in sum and substance, that Cohen was hated due to his prior complaints. Ultimately, Miriam Ortiz ("Ortiz") was hired for the Principal position.

44. Around this time, Trufkafka reiterated her desire to have Cohen as her AP, but feared recommending him due to HUFSD's known disdain for Cohen due to his prior complaints of discrimination.

45. Moreover, around this time, McBeth recommended Cohen as Ortiz's replacement as AP. However, notwithstanding this fact, Kenya Vanterpool, a similarly situated black employee outside of Cohen's protected classes, had not previously filed

complaints of discrimination, and who had less seniority and less elementary experience than Cohen, was given the AP position.

46. On June 5, 2014, HUFSD posted a Professional Developer job opening – the position for which Cohen had been demoted. This was the subject of Cohen's prior complaint of discrimination. Cohen applied for this position but never received a response.

47. On June 20, 2014, at the behest of McBeth, Cohen again applied for an AP position with HUFSD. McBeth advised Cohen that, if it were up to her, he would receive the position. Cohen was well prepared for the position, given the previous training he had received from McBeth, as well as his expensive experience functioning as an acting principal for multiple elementary schools within the HUFSD during multiple school years. In fact, Cohen functioned as acting assistant principal (and at times, as acting principal) at a HUFSD school between 2006 and 2011, between 2011 and 2012, and between 2013 and 2014.

48. At the close of the 2013/2014 school year, Cohen met with McBeth to discuss the AP position further. McBeth reiterated that HUFSD still "hates" Cohen for his discrimination claim that he had previously lodged against HUFSD.

49. In August 2014, Cohen was assigned as a Teacher for the 2014/2015 school year, instead of AP or another administrative position for which Cohen was exceedingly qualified.

50. Before the start of classes that year, during a meeting with the Math Department faculty, Jones told teachers to ask her if they needed any baseline assessments, which is a test given to students to assess their knowledge base at the outset of a

school year.  Cohen asked for assessments, but was ignored.  Other similarly situated teachers outside of Cohen's classes and who had not complained about discrimination also made similar requests, and their requests were answered. Cohen reiterated his request after the meeting, but rather than provide the assistance, Jones simply told Cohen to make his request via email.

51. Pursuant to her request, on September 2, 2014, Cohen emailed Jones.  Jones again responded to Cohen using biblical references.  Cohen lodged a complaint regarding this conduct to McBeth.

52. Moreover, shortly thereafter, upon seeing Jones in the hallway, Cohen again asked her to stop using biblical references in her emails as he found them to be offensive. Jones did not respond to Cohen and instead slammed a door between them shut.

53. On September 30, 2014, while at school, Cohen re-injured his shoulder.  Cohen continued working through excruciating pain and, after the day ended, reported his injury to HUFSD's Medical Office.

54. Pursuant to HUFSD policy, injury reports are supposed to be processed as soon as possible.

55. On October 8, 2014, Cohen received medical treatment from Dr. Answorth Allen, an Orthopedist.  Dr. Allen prohibited Cohen from working pending an MRI that was to be done.

56. On October 9, 2014, Cohen reported to work.  He requested of McBeth that she search for an interim replacement for him because he did not know how long he would be able to manage the pain he was experiencing, and wanted to make sure a suitable replacement teacher would be lined up for if/when he would have to be out.

57. As of October 23, 2014, Cohen's injury report remained unprocessed.

58. On October 24, 2014, Cohen stopped working due to his disability.

59. On October 29, 2014, Cohen received yet another email from Jones reciting the bible.

60. On November 19, 2014, Cohen received medical attention from Dr. Allen. Dr. Allen ordered that Cohen not return to work pending a second MRI. Cohen submitted this medical note to HUFSD.

61. On December 1, 2014, Gilmore asked Cohen about the reason for his absences. Cohen explained his injury to Gilmore and that he had informed McBeth that he would require an extended absence due to his disability. Gilmore directed Cohen to apply for a half-year medical sabbatical, at full pay, and informed Cohen that he may be required, as part of that application, to get a second opinion.

62. On December 4, 2014, Cohen submitted a letter request for a medical sabbatical.

63. On December 18, 2014, Gilmore emailed Cohen that, pending Board of Education approval, the Superintendent of Schools would require Cohen to receive a fitness evaluation. In the meantime, Cohen's request for a sabbatical was placed on hold.

64. On January 9, 2015, Gilmore emailed Cohen the minutes of a Board meeting whereat Cohen was "assigned home, with pay" pending the outcome of a fitness evaluation. To date, Cohen has not received back pay for this period, when he was assigned home with pay pending the outcome of a fitness evaluation.

65. By letter dated January 12, 2015, Gilmore informed Cohen that he was "suspended with pay" and that the evaluation would be conducted by Dr. Gregory Lieberman. Cohen questioned Gilmore as to why he was deemed "suspended" when the Board

had "assigned" him home per the Board minutes.  Gilmore told Cohen that it was probable just a mistake in terminology and would be corrected.  This was never corrected despite numerous unanswered requests for same from Cohen.

66.    On January 15, 2015, Dr. Lieberman examined Cohen's injury and, as a result, prohibited Cohen from returning to work until "further notice."

67.    After meeting with Dr. Lieberman, Cohen began to use Dr. Lieberman as his treating orthopedist, rather than Dr. Allen.

68.    On January 29, 2015, after a follow-up examination, Dr. Lieberman ordered Cohen to remain out of work "until further notice."

69.    On February 4, 2015, Gilmore called Cohen and discussed the fitness evaluation and Cohen's decision to make Dr. Lieberman his treating orthopedist.  On that call, Cohen explained the situation and Gilmore recognized and acknowledged that everything was fine with the situation.

70.    Notwithstanding the conversation the prior day, by letter dated February 5, 2015, Gilmore wrote to Cohen falsely accusing him of failing to inform the District that the orthopedist they sent him to for his independent medical examination was his treating physician. This was not true, as Cohen only began to use Dr. Lieberman as his treating physician after he had been subjected to the IME/fitness evaluation.

71.    Moreover, Gilmore's letter advised Cohen that his "failure to disclose" this information would weigh heavily in HUFSD's determination regarding Cohen's medical sabbatical application.

72. Gilmore then directed Cohen to attend a second IME. This time, he was directed to report for an examination with Dr. Edmunde Steward, located in Port Jefferson, New York.

73. On February 9, 2015, via overnight mail, Cohen sent a letter to Gilmore requesting that the IME location be changed or cancelled as a medical accommodation, as the location for the IME would have been approximately a 110 mile commute for Cohen. Cohen received no response.

74. On February 12, 2015, Dr. Steward examined Cohen, confirmed his injury, and resulting need for a sabbatical.

75. On March 4, 2015, Gilmore called Cohen and informed him that his sabbatical request would be decided on March 12, 2015. Gilmore stated that, as a result of Cohen's February 9 letter, the Superintendent decided to request that Cohen's request not be granted with pay.

76. In addition to the above, throughout recent years, multiple letters have been issued to Cohen and placed in his file which include false misrepresentations regarding his performance.

77. In December 2015, when Cohen was cleared to return to work, he was involuntarily transferred to a new assignment at ABGS Middle School, which removed him from an elementary classroom to a roving science teacher of middle school students. Cohen has no assigned classroom and has to carry all his materials from class to class.

78. Moreover, the District has improperly taken Cohen's sick days from him, removing his accrued sick leave balance from his sick leave bank with no explanation. As a

result, HUFSD has periodically docked Cohen's paycheck for time that he has been out, alleging that he did not have sick time in his sick bank, when in fact, Cohen should have had time for these absences.  For example, in February 2016, Cohen was out of work for nineteen days due to a serious motor vehicle accident which he was a party to.  Due to HUFSD's conduct, Cohen was not paid for any of those absences.

79. Moreover, upon information and belief, during the days Cohen was out on workers' compensation, HUFSD has received money that should be paid to Cohen for his approved WC, but has withheld some of this money from Cohen.

80. The aforementioned discriminatory conduct has caused Cohen to suffer lost wages and benefits, continued and future lost wages and benefits, as well as emotional and physical damages.

## CLAIMS FOR RELIEF

81. Plaintiff has been subjected to a hostile work environment, and/or adverse employment actions, as well as an atmosphere of adverse employment actions based on his race, color, religion, and in retaliation for his opposition to discrimination.  Defendant HUFSD's actions are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, *et seq.*

82. Plaintiff has been subjected to a hostile work environment, and/or adverse employment actions, as well as an atmosphere of adverse employment actions based on his disability and/or in retaliation for his need for accommodations.

Defendant HUFSD's actions are in violation of the Americans with Disabilities Act.

83.    Defendant HUFSD has, while acting under color of state law, deprived Plaintiff of his constitutional rights, as secured by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983, and all related provisions of the New York State Constitution.    HUFSD and HUFSD's supervisors have intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights.    Such deliberate indifference may be inferred in the following ways:

a.    The HUFSD's custom or practice of discriminating against and/or harassing Plaintiff based his race, color, religion, disability, and/or engaging in protected activities, as outlined in further detail above.    The discriminatory and retaliatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

b.    Supervisors failed to properly investigate and address allegations of harassment and/or discrimination.

c.    Inadequate training/supervision was so likely to result in the harassment, and/or discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

d.    Policymakers, as outlined above, engaged in and/or tacitly condoned the harassment and/or discrimination.

84.    The individual Defendants unlawfully participated in and/or permitted the aforementioned unlawful discriminatory conduct to perpetuate, without abatement, in violation of Plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff demands judgment against Defendants for all compensatory, emotional, physical, and punitive damages (against the individual defendants only), lost pay, front pay, injunctive relief, and any other damages permitted by law.   It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.   Plaintiff demands a trial by jury.

Dated: Long Island City, New York
      April 19, 2016

WHITE, RICOTTA & MARKS, P.C.
*Attorneys for Plaintiff*
31-10 37th Avenue, Suite 401
Long Island City, New York 11101
(347) 464-8694

THOMAS RICOTTA (TR-1900)